U.S. District Court
Connecticut
FILED AT NEW HAVEN

February 29      2024

By      S. Santos
      Deputy Clerk

# UNITED STATES DISTRICT COURT

# DISTRICT OF CONNECTICUT

| | |
|---|---|
| IN THE MATTER OF AN APPLICATION OF THE UNITED STATES OF AMERICA FOR A SEARCH WARRANT FOR FIVE CELLULAR DEVICES | : <br> : Case No. 24-mj- 175         (MEG) <br> : <br> : |

## AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT

I, Anthony Fasulo, being duly sworn, depose and state as follows:

## I.     INTRODUCTION AND AGENT BACKGROUND

1.      I, Anthony Fasulo, am a Task Force Officer ("TFO") with the Drug Enforcement Administration ("DEA"), United States Department of Justice. I am currently assigned to the New Haven District Office Task Force.

2.      I am an investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18, United States Code, that is, an officer of the United States who is empowered by law to conduct investigations and to make arrests for federal felony offenses. I am currently employed by the Connecticut State Police, and have been since June 2015.  I have been assigned to the Drug Enforcement Administration (DEA) as a Task Force Officer (TFO) since May 2021. During my tenure as a police officer and Task Force Officer, I have participated in numerous criminal investigations, including investigations into suspected narcotics trafficking. I am currently assigned to the New Haven District Office, Organized Crime Drug Enforcement Task Force, ("Task Force") which is composed of personnel from the DEA, United State Marshal Service ("USMS"), New Haven Police Department ("NHPD"), West Haven Police Department ("WHPD"), Branford Police Department, ("BPD"), Meriden Police

Department ("MPD"), Ansonia Police Department ("APD"), Middletown Police Department ("MPD"), Naugatuck Police Department ("NPD"), and Waterbury Police Department ("WPD").

3.      I have received instruction relative to conducting drug investigations while attending the Connecticut Police Academy (POSTC) in Meriden, Connecticut, as well as other training classes relative to narcotics trafficking. Over the past seven (7) years in law enforcement, I have participated in the execution of numerous seizure warrants which have resulted in the seizure of narcotics, United States currency, assets acquired with drug proceeds and assets utilized to facilitate drug activities. I have participated in numerous investigations involving individuals suspected of distributing illegal drugs, participated in controlled purchases of illegal drugs utilizing cooperating witnesses, confidential sources and undercover agents/officers, and obtained and coordinated the execution of search and arrest warrants pertaining to individuals involved in the distribution of illegal drugs. As a result of my training and experience, I am familiar with the manners in which controlled substances are commonly brought to Connecticut, manufactured, processed, packaged and distributed. I know the relative wholesale and retail value of various types of controlled substances. I am familiar with behaviors, methods and common practices of persons and organizations that illegally transport and distribute controlled substances, as well as the devices commonly utilized by them.

4.      I have participated in numerous investigations involving individuals suspected of distributing illegal drugs, coordinated controlled purchases of illegal drugs utilizing cooperating witnesses, confidential sources and undercover agents/officers, and obtained and coordinated the execution of search and arrest warrants pertaining to individuals involved in the distribution of illegal drugs. As a result of my training and experience, I am familiar with the manner in which controlled substances are commonly imported, manufactured, processed, packaged and

distributed. I know the relative wholesale and retail value of various types of controlled substances. I am familiar with behaviors, methods and common practices of persons and organizations that illegally import and distribute controlled substances, as well as the devices commonly utilized by them.

5.      As a result of my training and experience, I am familiar with the behaviors, methods and common practices employed by drug traffickers, including but not limited to those discussed below.

6.      I am familiar with the paraphernalia and devices commonly utilized by narcotics traffickers.

7.      I am familiar with and have analyzed records documenting the illegal purchase of and sale of controlled substances

8.      I am familiar with the practices commonly employed by narcotics traffickers to avoid detection by law enforcement

9.      Based on my training and experience, I also know that powder drugs, such as heroin, leave microscopic residue on the surfaces of objects they have come in contact with, such as storage containers, which residue can be acquired, preserved and analyzed with equipment available to law enforcement.

10.      This affidavit is submitted in support of an application for a warrant to search the following cellular devices (collectively, the "TARGET DEVICES"), which are further described in Attachment A.

A.  **TARGET TELEPHONE 1,** a black Apple iPhone with a cracked screen, assigned call number (203) 410-0081.  This phone was located on the bed frame of DIAZ'S

bedroom of his Orange Street, New Haven apartment, and seized during the execution of a federal search warrant.

B. **TARGET TELEPHONE 2,** a white Apple iPhone in a checkered protective case, This phone was located on the bed frame of DIAZ'S bedroom of his Orange Street, New Haven apartment, and seized during the execution of a federal search warrant.

C. **TARGET TELEPHONE 3,** a white and pink Apple iPhone. This phone was located on the bed frame of DIAZ'S bedroom of his Orange Street, New Haven apartment, and seized during the execution of a federal search warrant.

D. **TARGET TELEPHONE 4,** a purple Apple iPhone in a money protective case. This phone was located on the bed frame of DIAZ'S bedroom of his Orange Street, New Haven apartment, and seized during the execution of a federal search warrant.

E. **TARGET TELEPHONE 5,** a blue AT&T flip phone was located on the kitchen counter next to DIAZ'S belonging. This phone was located in the kitchen of DIAZ'S Orange Street, New Haven apartment, and seized during the execution of a federal search warrant.

11.     As part of my duties, I am currently participating in an investigation into suspected ongoing narcotics trafficking, in violation of 21 U.S.C. §§ 841(a)(1) and 846 by Joshuwa DIAZ and others identified and unidentified individuals. Based on the facts set forth in this affidavit, there is probable cause to believe, and I do believe, that violations of 21 U.S.C. §§ 841(a)(1) (distribution of narcotics, possession with intent to distribute narcotics) and 846 (conspiracy to distribute and possess with intent to distribute narcotics) (hereafter referred to as the "Target Offenses") have been committed, are being committed, and will be committed by these individuals.

12.     I am familiar with the facts and circumstances of the aforementioned investigation as a result of my personal participation in the investigation; from discussions with agents of the DEA and other law enforcement personnel; from information provided by witnesses involved in the investigation; from my review or the reviews by others to whom I have spoken of pen register and telephone toll records; and from my review of records, reports and affidavits relating to the investigation. Unless otherwise noted, wherever in this affidavit I assert that a statement was made, the information was provided by another law enforcement officer or witness who may have had either direct or hearsay knowledge of that statement and to whom I or others have spoken or whose reports I have read and reviewed. Such statements are among many statements made by others and are stated in substance and in part unless otherwise indicated. The information contained in this affidavit is based on this familiarity, and upon information which I have reviewed and determined to be accurate and reliable.

## II.     PROBABLE CAUSE

13.     Since in or about December 2023, members of the DEA New Haven District Office along with members of the New Haven Police Department have been investigating a Drug Trafficking Organization (DTO) of which Daniella FOX (currently charged in this district in case no.: 22-cr-43(VAB) was a member (hereinafter "FOX DTO").  Multiple controlled purchases have been conducted into cellular telephone numbers that the DTO is utilizing, to include TARGET TELEPHONE 1, (203) 410-0081, by a confidential source (CS).

### A.     CONTROLLED PURCHASE

14.      During the week ending December 22, 2023 DEA NHDO and New Haven Police Department formulated plans to conduct a narcotic purchase from the FOX DTO, which was utilizing TARGET TELEPHONE 1.  TFO Savo and NHPD Detective Vakos met with a New

Haven Police Department CS at a pre-arranged meet location, where the CS was searched, and no contraband was found. While in the presence of TFO Savo and Det. Vakos the CS placed a phone call to TARGET TELEPHONE 1. A male answered the phone and told the CS to meet in the area of a known location within the City of New Haven. The CS was then provided DEA official funds and made his/her way to the area. While in the specific area, pre-established surveillance observed a black Mercedes, bearing CT Registration BJ08398 arrive in the area. The vehicle was observed to stop in the area of the CS, the CS then entered the vehicle, and the vehicle sped off at a high rate of speed. The vehicle was followed by investigators as it was observed to "circle the block" and return to the area of where the CS was picked up. Once back at the area, the CS was observed to exit the vehicle and depart the area. The CS then made his/her way back to the pre-arranged meet location, where the CS relinquished two blue zip-lock style bags containing a white powder substance of suspected fentanyl and one small zip-lock style bag containing a white rock like substance of suspected crack-cocaine. The CS was then searched again, in which no contraband was located. The CS stated that FOX was not in the vehicle and that a Hispanic male was operating the vehicle and conducted the narcotic transaction.

15.     After the controlled purchase was conducted, investigators attempted to conduct mobile surveillance of the Mercedes in order to identify the operator and narcotic dealer. While surveilling the Mercedes, the vehicle was observed to travel at a high rate of speed, weave in and out of traffic, run red lights, and stop in multiple places. At one instance during the surveillance the Mercedes pulled into a Mobile Gas Station, located at 241 Kimberly Avenue, New Haven. On December 21, 2023 TFO Savo and TFO Rappa went to the Mobile Gas Station, to retrieve video surveillance footage to possibly identify the operator. TFO Savo reviewed video footage specific to the times the Mercedes was seen at the gas station. TFO Savo was able to observe the Hispanic

male exit the Mercedes and then enter the gas station, through video footage.  TFO Savo obtained

a photograph of the Hispanic male, which was provided to partner law enforcement agencies.  FBI

TFO William Coppola and FBI TFO Luke Rassile were able to identify the Hispanic male as

Joshuwa DIAZ.  The photo from the gas station was compared to a DMV photograph, resulting in

the positive identification of DIAZ.   DIAZ has a listed address of 15 Donna Drive, Apt C3, New

Haven.  DIAZ has a criminal history to include sale of narcotics, robbery, and conspiracy to

distribute heroin.

### B.   IDENTIFICATION OF TARGET PREMISES

16.   On January 25, 2024, members of the DEA New Haven District Office

formulated plans to surveil Joshuwa DIAZ.  DIAZ reported that his vehicle was stolen and was

coming to the East Haven Police Department to file a report.  Surveillance was established in and

around the area of East Haven Police Department.  At approximately 11:15 A.M., investigators

observed a blue Chevrolet Malibu bearing Massachusetts registration 4HWJ55 enter the parking

lot of the East Haven Police Department.  A male exited the vehicle, who investigators identified

as DIAZ, walked to the entrance, and entered the police department.  At approximately 11:50

A.M., investigators observed DIAZ exit the police department, walk toward the vehicle, and

enter the driver side.  DIAZ then departed the area and was followed by investigators into the

City of New Haven.  While surveilling DIAZ, investigators observed DIAZ pull into 81 George

Street, the George Street Garage.  Investigators know this garage to be a parking location for

residents of 44 Orange Street, which is an apartment complex.  Investigators then made the

determination to follow DIAZ on foot into the apartment complex.  TFO Joel Perez and TFO

Shawn Mendenhall were able to locate DIAZ entering the apartment building and followed

DIAZ to the third floor and observed DIAZ enter Apartment #309.  Surveillance was then

terminated.

### C.   **SURVEILLANCE OF DIAZ NARCOTICS TRANSACTION**

17.   On February 15, 2024, members of the DEA New Haven District Office

formulated plans to conduct a surveillance operation of DIAZ.  At approximately 10:00 A.M.,

surveillance was established in the George Street parking garage by TFO Kyle Savo.  TFO Savo

observed the SUBJECT VEHICLE parked in the garage.  At approximately 12:36 P.M., TFO

Savo observed DIAZ exit the apartment complex and enter the parking garage.  DIAZ was

observed to be carrying a bag, which appeared to weighted down with items, and enter the

SUBJECT VEHICLE.

18.   DIAZ was observed to exit the garage and travel in the direction of Interstate 95.

DIAZ was followed by investigators as he entered I-95 Northbound and followed DIAZ as he

exited off of Exit 55 East Main Street.  DIAZ was then observed to pull into the rear of 420 East

Main Street.  While at this location, it was observed that DIAZ did not exit his vehicle at any

time.  Investigators then observed a thin build female wearing a pink shirt and headband walk in

the direction of the SUBJECT VEHICLE.  The female was observed to enter the SUBJECT

VEHICLE and the SUBJECT VEHICLE then departed the area.  The SUBJECT VEHICLE,

DIAZ, and the unknown vehicle were followed to the Planet Fitness parking lot, where the

female was observed to exit the vehicle and cross the street in the direction of Branford Motel.

DIAZ was surveilled out of the area and the determination was made to approach the female.

19.   The female was approached by investigators where she was found in possession

of two clear zip lock bags containing a white rock like substance, suspected to be crack cocaine,

and two clear blue zip lock style bags containing a white powder substance, suspected to be

fentanyl.  The suspected narcotics tested positive for the presence of cocaine and fentanyl.

During a roadside interview of the female, who was identified, she stated that she called

TARGET TELEPHONE 1 and ordered the narcotics, was picked up at 420 East Main Street,

conducted the transaction inside of the SUBJECT VEHICLE, and was dropped off at the Planet

Fitness.  Investigators asked the female what cellular telephone number she called and she

showed investigators TARGET TELEPHONE 1 in her phone log.  She stated that she calls

DIAZ by the alias of "Foxy."

20.     It should be noted that while surveillance of DIAZ was being conducted from the

George Street Garage until he departed from the Planet Fitness parking lot, he was not observed

to stop at any other locations or exit the SUBJECT VEHICLE.

### D.  EXECUTION OF FEDERAL SEARCH WARRANT AT 44 ORANGE STREET

21.  On February 15, 2024, the Honorable Maria E. Garcia, United States Magistrate

Judge, issued a search warrant for DIAZ'S residence located at 44 Orange Street, Apartment

309, New Haven, CT and DIAZ'S 2023 Chevrolet Malibu bearing Massachusetts Registration

4HWJ55.

22.  On February 16, 2024, at approximately 6:00 A.M., members of the DEA NHDO in

conjunction with the New Haven Police Department (NHPD) executed the search warrants at

DIAZ'S residence and vehicle.  During the course of the search warrant execution, investigators

located in DIAZ'S apartment a large sum of United States Currency, 228.91 grams (including

packaging) of fentanyl (field-tested positive), 361.14 grams (including packaging) of cocaine

(field-tested positive), and 126.68 grams (including packaging) of cocaine base (field-tested

positive),[1] a scale, a blender with white residue, a large quantity of mannite (cutting agent),

---

[1] All drug weights are approximations.

packaging material and five (5) cellular telephones (SUBJECT DEVICES).  Four of the cellular

telephones, TARGET TELEPHONES 1, 2, 3 and 4, were in close proximity to Diaz as they were

located on the bed frame of DIAZ'S bedroom where he emerged from and was subsequently

arrested.  An additional blue AT&T flip phone was located on the kitchen counter next to

DIAZ'S belonging.  TFO Fasulo called (203) 410-0081 (TARGET TELEPHONE 1) where one

of the cell phones began to ring.  All five cell phones were seized as evidence.  Diaz was alone in

the apartment and there was no evidence that anyone else resided in the apartment.  DIAZ was

arrested and presented the same day.

     23.    Based on the information set forth above, as well as my training and experience

and that of other law enforcement personnel participating in this investigation, I believe that

DIAZ is using the TARGET DEVICES including TARGET TELEPHONE 1 to facilitate and

distribute narcotics for the FOX DTO, and searches of these TARGET DEVICES are likely to

lead to the discovery of evidence of drug trafficking activity, including sources, stash locations,

and other facilitators of the drug trafficking trade.

     24.    Based on the foregoing, there is probable cause to believe, and I do believe, that

fruits, instrumentalities and evidence of violations of 21 U.S.C. §§ 841(a)(1) and 846 will be

found inside the SUBJECT DEVICES as described above, and that a warrant to search the

SUBJECT DEVICES should issue.

**ADDITIONAL INFORMATION ABOUT THE TARGET CELL PHONES**

     25.    In my training and experience, it is common for drug traffickers to use multiple

phones, and to "drop" or "change" their cellular phones, in part to attempt to evade detection by

law enforcement, but that drug traffickers who discontinue use of a particular phone will often

keep that phone in a secure location in order to maintain records of customer phone numbers and

historical communications (for example, preserved text messages).

26.     Additionally, based upon my training and experience, I am familiar with the manner and means employed by narcotics traffickers, including the manner and means by which narcotics traffickers communicate, and those methods employed by narcotics traffickers to avoid detection by law enforcement.

27.     From my training and experience, I know that narcotics traffickers often use multiple wireless telephones, and often speak to one another using coded, cryptic or slang words and phrases, in the belief that by doing so they can thwart the efforts of law enforcement to identify them and their activities and to seize their drugs, guns and/or other assets. I also know that such individuals often frequently "drop" or "change" their cellular telephones, *i.e.* terminate usage of one cellular telephone and begin usage of a new cellular telephone, in an attempt to thwart the efforts of law enforcement, and often possess and use multiple cellular telephones interchangeably for the same reason. Furthermore, I know that drug traffickers and the couriers and transporters that work for sources of supply often compartmentalize operations by using different phones to communicate with different re-distributors so that if one part of the distribution operation is compromised by law enforcement, other aspects of the operation remain intact. The use of multiple cell phones at the same time is one way to achieve such compartmentalization. I and other law enforcement officers that I have work within drug investigations have had the opportunity to obtain search warrants for cell phones in the past. The execution of these search warrants has resulted in the recovery of, among things, text messages, photographs, WhatsApp messages, Facebook messages, and phone contacts that have constituted evidence of drug trafficking.

28.     From my training and experience, I also know from the makes and models of the Subject Phones that they retain data including, but not limited to, Bluetooth data, Wi-Fi

connectivity data, contacts, text messages, voicemails, and GPS location data. There is probable cause to believe, and I do believe, that location information stored on the Subject Phones may reveal the location of co-conspirators, stash house locations, and a pattern of life of participants in the drug trafficking activity being investigated here.

29.     Based on my training and experience and discussions with other investigators, it is known that persons who smuggle and transport illegal narcotics frequently use cell phones to maintain contact with co-conspirators during travel and also use cell phones to contact persons where the drugs are destined. This frequently occurs due to the transient nature of these smuggling operations and because members of these conspiracies frequently travel and require coordination of their movements in order to pick up and drop off drugs at designated times and places.

## ELECTRONIC DEVICES SEARCHES

30.     Based on my training and experience, and consultation with, and information from other law enforcement sources, including sources with expertise pertaining to the features and functionality of cellular telephones and computers, I know the following information tends to exist on wireless telephones, including wireless telephones utilized by those engaged in narcotics trafficking activities:

     a.  the telephone call number and other identifiers (ESN number, IMSI, IMEI, MEID, and SIM card number) associated with said device/s;

     b.  call logs/histories, numbers, digits, stored messages (voice and/or text), letters, symbols, data, information, and images and videos stored in the memory of said device/s;

     c.  descriptions of time, date, locations, items, or events showing or tending to show the commission of, or connecting or tending to connect a person to, the above-described offenses;

     d.  records which tend to demonstrate ownership and use of the phone, and identification bearing the name or photograph of any person, telephone-books,

address books, date books, calendars, personal files, and photographs of persons contained in the phone;

e.  information showing or tending to show the identity of the maker or user of the data and information contained in the phone, such as passwords, sign-on codes, and program design;

f.  GPS coordinates, waypoints, destinations, addresses, and location search parameters associated with GPS navigation software;

g.  saved searches, locations, and route history in the memory of said device/s; and

h.  internet browsing history, to include, internet searches in the memory of said devices.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

31.  The warrants applied for to search the Subject Phones would authorize the seizure of electronic storage media or, potentially, the copying of electronically stored information, all under Rule 41(e)(2)(B).

32.  Based upon my training and experience, and in consultation with other law enforcement officers, I know that cellular telephones store voice mail messages, names, telephone numbers, addresses, sent and received text messages and images on their digital memory. Some devices also store location data, showing where the phone has traveled, and also contain third party applications that store additional communications. Further, often the only way to recover information and communications from third party applications is by recovering data stored on the cell phones.

33.  The applied-for warrant would authorize the forensic examination of the Subject Phones, including access to all internal applications within those cell phones, for the purposes of identifying electronically stored data particularly described in Attachment B.

34.     A thorough search of digital media, such as cell phones, for evidence of a crime

commonly requires a qualified expert to conduct the search. This is true for the following

reasons:

1. Searching digital media is a highly technical process, which requires specific expertise
   and specialized equipment. There are so many types of digital media in use today that it
   is impossible to bring to the search site all of the necessary technical manuals and
   specialized equipment necessary to conduct a thorough search. In addition, it may also be
   necessary to consult with personnel who have specific expertise in the type of digital
   media that is being searched.

2. Searching digital media requires the use of precise, scientific procedures which are
   designed to maintain the integrity of the evidence and to recover "hidden," erased,
   compressed, encrypted, or password-protected data. Since such data is particularly
   vulnerable to inadvertent or intentional modification or destruction, a controlled
   environment, such as a law enforcement laboratory, is essential in conducting a complete
   and accurate analysis of the equipment and storage device from which the data can be
   extracted.

35.     I know through training and experience that a modern cellular telephone handset

stores data relating to the device's usage. This data includes call logs, calls received, stored

telephone numbers, text messaging, email messages, video files, image files, and audio files.

Moreover, this data, even if untouched for a long time or deleted, may be retrievable through

forensic examinations conducted by qualified personnel.

36.     A cellular telephone has become a virtual recorder of a person's daily activities.

Data within a cellular telephone can log identifiers regarding calls made and received as well as

when these conversations occurred. The data may include information that includes call logs,

pictures, and a contact list of known acquaintances or coconspirators. Due to this potential of

data, a cellular telephone has become an indispensable piece of evidence in criminal

investigations.

37.     Furthermore, the data contained within cellular telephones is, and can be, useful

in identifying the actual owner of the telephone as well as who may have been using the

telephone by examining the calls or messages sent, received, or missed. Further, the data contained within the device is useful to investigators in that it may show communication between a victim, a suspect, and other coconspirators or other potential valuable witnesses prior to, during, or after the time of the crime or incident.

38.     Based on my training and experience, I know that modern cell phones have different capabilities that allow them to serve as cellular devices, cameras and video recorders, portable media players, and GPS navigation devices. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device, as well as evidence relating to co-conspirators with whom the user of the device was in contact.

39.     Furthermore, based on my training and experience, I know that internet-browsing history in cellular telephones can contain evidence of email communications between co-conspirators and internet searches for locations and addresses utilized to meet and discuss criminal activity. Cellular telephones may also contain videos and images of co-conspirators; possible locations used to discuss criminal activity (e.g., acquiring or selling narcotics), such as residences and businesses; as well as conveyances used during criminal activity, such as automobiles. Specifically, based on my training and experience, I know the following information tends to exist on cellular telephones, including devices used by those involved in illegal narcotics trafficking:

1.  the telephone number, ESN number, serial number, and SIM card number of said telephone;

2.  the numbers, digits, stored messages (voice and/or text), letters, symbols, data, information, and images stored in the memory of said device;

3.  descriptions of time, date, locations, items, or events showing or tending to show the commission of, or connecting or tending to connect a person to, the above-described crimes;

4.  any and all records, however created or stored, which tend to demonstrate ownership and use of the phone, and identification bearing the name or photograph of any person, telephone books, address books, date books, calendars, personal files, and photographs of persons contained in the phone;

5.  any and all evidence showing or tending to show the identity of the maker or user of the data and information contained in the phone, such as passwords, sign-on codes, and program design;

6.  GPS coordinates, waypoints, destinations, location data, addresses, and location search parameters associated with GPS navigation software;

7.  saved searches, locations, and route history in the memory of said devices;

8.  internet browsing history, to include, internet searches in the memory of said device; and

9.  Images and videos in the memory of said device.

40.  In searching for evidence, fruits, and instrumentalities of criminal activity within the Target Cell Phones, as set forth herein, the Government will employ the following procedures:

1.  The cell phone(s) will be provided to the appropriate law enforcement personnel for review to determine whether the contents of the cell phone(s) contain evidence and instrumentalities of violations of federal law.

2.  The cell phone(s) and the contents thereof will be reviewed by appropriately trained personnel in order to extract and seize any data that relates to the fruits, instrumentalities, and evidence related to the Target Offenses.

41.  I also request that the Court authorize the retrieval of the above-described stored electronic information by printing said stored electronic information or otherwise reproducing said stored electronic information, by converting said stored electronic information, or by copying said stored electronic information into storage in another device. I am aware that in some cases the software or equipment necessary to analyze cellular devices in this manner is not readily available to law enforcement during the course of the execution of a search and/or arrest warrant.

42.     It is also requested that the warrant be deemed executed once the cell phones have been seized in the manner described above, and that further analysis of the images be permitted at any time thereafter.

43.     Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the Subject Phones consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

44.     Searching for the evidence described in Attachment B may require a range of data analysis techniques. In some cases, agents and analysts may be able to conduct carefully targeted searches that can locate evidence without requiring a time-consuming manual search through unrelated materials that may be commingled with criminal evidence. In other cases, however, such techniques may not yield the evidence described in the warrant. Criminals can mislabel or hide information, encode communications to avoid using key words, attempt to delete information to evade detection, or take other steps designed to frustrate law enforcement searches for information. These steps may require agents and law enforcement or other analysts with appropriate expertise to conduct more extensive searches, such as scanning storage areas unrelated to things described in Attachment B, or perusing all stored information briefly to determine whether it falls within the scope of the warrant. In light of these difficulties, the FBI intends to use whatever data analysis techniques appear necessary to locate and retrieve the evidence described in Attachment B.

## <u>AUTHORIZATION REQUESTS</u>

45. Based on the foregoing, I request that the Court issue the proposed search warrant.

46. Because the SUBJECT DEVICES are already in law enforcement custody, I submit that there is good cause for authorizing the requested search to take place at any time of day or night.

Respectfully submitted,

Anthony Fasulo
Digitally signed by Anthony Fasulo
Date: 2024.02.29 13:40:42 -05'00'

_____
Anthony Fasulo
Task Force Officer
Drug Enforcement Administration

Subscribed and sworn to before me by telephone this _____th day of February 2024 in New Haven, CT.

Maria E. Garcia
Digitally signed by Maria E. Garcia
Date: 2024.02.29 14:11:38 -05'00'

_____
HON. MARIA E. GARCIA
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A-1

### Property To Be Searched

The following cellular devices, all in the custody of the DEA in New Haven, Connecticut:

a. **TARGET TELEPHONE 1,** a black Apple iPhone with a cracked screen, assigned call number (203) 410-0081.  This phone was located on the bed frame of DIAZ'S bedroom of his Orange Street, New Haven apartment, and seized during the execution of a federal search warrant.  This warrant authorizes the forensic examination of TARGET TELEPHONE 1 for the purpose of seizing the items described in Attachment B.



## <u>ATTACHMENT A-2</u>

**Property To Be Searched**

The following cellular devices, all in the custody of the DEA in New Haven, Connecticut:

a. **TARGET TELEPHONE 2,** a white Apple iPhone in a checkered protective case,
   This phone was located on the bed frame of DIAZ'S bedroom of his Orange Street,
   New Haven apartment, and seized during the execution of a federal search warrant.
   This warrant authorizes the forensic examination of TARGET TELEPHONE 2 for
   the purpose of seizing the items described in Attachment B.

## ATTACHMENT A-3

### Property To Be Searched

The following cellular devices, all in the custody of the DEA in New Haven, Connecticut:

a. **TARGET TELEPHONE 3,** a white and pink Apple iPhone. This phone was located on the bed frame of DIAZ'S bedroom of his Orange Street, New Haven apartment, and seized during the execution of a federal search warrant. This warrant authorizes the forensic examination of **TARGET TELEPHONE 3** for the purpose of seizing the items described in Attachment B.



**ATTACHMENT A-4**

**Property To Be Searched**

The following cellular devices, all in the custody of the DEA in New Haven, Connecticut:

a. **TARGET TELEPHONE 4,** a purple Apple iPhone in a money protective case. This phone was located on the bed frame of DIAZ'S bedroom of his Orange Street, New Haven apartment, and seized during the execution of a federal search warrant.  This warrant authorizes the forensic examination of **TARGET TELEPHONE 4** for the purpose of seizing the items described in Attachment B.

## ATTACHMENT A-5

### Property To Be Searched

The following cellular devices, all in the custody of the DEA in New Haven, Connecticut:

a. **TARGET TELEPHONE 5,** a blue AT&T flip phone was located on the kitchen counter next to DIAZ'S belonging. This phone was located in the kitchen of DIAZ'S Orange Street, New Haven apartment, and seized during the execution of a federal search warrant. This warrant authorizes the forensic examination of **TARGET TELEPHONE 5** for the purpose of seizing the items described in Attachment B.



<u>**ATTACHMENT B**</u>

**Particular Things to be Seized**

All records and information evidencing drug trafficking offenses in violation of Title 21, United States Code, Sections 841(a)(1), and 846 (Conspiracy to Possess with Intent to Distribute Controlled Substances), since December 1, 2023, to include the following, as they relate to the above-listed offenses:

1. the telephone number, ESN number, serial number, and SIM card number of the telephone;

2. the numbers, digits, stored messages (voice and/or text), letters, symbols, data, information, and images stored in the memory of the telephone;

3. descriptions of time, date, locations, items, or events showing or tending to show the commission of, or connecting or tending to connect a person to, violations of 21 U.S.C. §§ 841(a)(1) and 846 and 843;

4. any and all records, however created or stored, which tend to demonstrate ownership and use of the device/s, and identification bearing the name or photograph of any person, telephone-books, address books, date books, calendars, personal files, and photographs of persons contained in the telephone;

5. any and all evidence showing or tending to show the identity of the maker or user of the data and information contained in the telephone, such as passwords, sign-on codes, and program design;

6. GPS coordinates, waypoints, destinations, addresses, and location search parameters associated with GPS navigation software;

7. saved searches, locations, and route history in the memory of said telephone;

8. internet browsing history, to include, internet searches in the memory of the telephone;

9. images and videos in the memory of the telephone; and,

10. evidence of user attribution showing who used or owned the telephone at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

It is specifically authorized that stored electronic information, data, information and images contained in the above-described telephone may be reproduced by printing said stored electronic information or otherwise reproducing said stored electronic information, by converting said stored electronic information, or by copying said stored electronic information into storage in another device(s).

To the extent that the telephone contains removable storage media and/or other devices, examination of such removable media and/or devices is specifically authorized for the same evidence as described in this attachment.

This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the DEA may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.